**REESE LLP**
MICHAEL R. REESE
*mreese@reesellp.com*
GEORGE V. GRANADE
*ggranade@reesellp.com*
100 West 93 Street, 16th Floor
New York, New York 10025
Tel:  212-643-0500
Fax:  212-253-4272

              - and -

**HALUNEN LAW**
CLAYTON D. HALUNEN (to be admitted *pro hac vice*)
*Halunen@halunenlaw.com*
MELISSA W. WOLCHANSKY (to be admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
CHARLES D. MOORE (to be admitted *pro hac vice*)
*Moore@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-605-4098
Facsimile: 612-605-4099

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAHAM FORSHER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE J.M. SMUCKER CO., <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Graham Forsher ("Plaintiff") files this Class Action Complaint on behalf of himself and others similarly situated, against The J.M. Smucker Co. ("Smucker" or "Defendant") demanding a trial by jury, and allege as follows:

## SUMMARY OF THE ACTION

1.      This is a proposed class action brought on behalf of a class, as defined below, of individuals who purchased Defendant's products labeled as "Jif® Natural Peanut Butter Spread" ("Natural, Jif®" as defined below)("Class"). Defendant falsely represents that Jif® is "Natural," when, in fact, it contains non-natural ingredients derived from genetically modified organisms ("GMO").

2.      Defendant manufactures, markets, and sells Natural Jif® throughout California, New York, and the United States.  Defendant launched Jif® in 2009, in an attempt to appeal to consumers looking for "good for you" products.[1] With a "Natural" objective clearly in mind, Defendant's marketing campaign has the obvious intent of branding the product as "Natural."

3.      Defendant manufactures, markets, and sells three varieties of Natural Jif®: Jif® Natural Creamy Peanut Butter Spread ("Jif® Creamy"); Jif® Natural Crunchy Peanut Butter Spread ("Jif® Crunchy"); and Jif® Natural Creamy Peanut Butter Spread and Honey ("Jif® Honey") (together, the "Products" or "Natural Jif®").

4.      The Products contain peanuts, sugar, palm oil, salt, and molasses. Jif® Honey also contains honey. (*See* Exs. A-C.)

---

[1]      The J.M. Smucker Co., *2009 Annual Report*, at 6, *available at* http://www.jmsmucker.com/investor-relations/smuckers-annual-report (last visited Dec. 11, 2015).

5.  The Products' labels emphasize that the spreads are "Natural." Defendant prominently places the statement "Natural" on the front panel of each of the Products. (*See* Exs. A-C).

6.  However, if reasonable consumers knew the Products contain ingredients manufactured from GMOs, they would not deem the Products to be "Natural."

7.  All of the Products contain sugar. The sugar is, on information and belief, manufactured from genetically modified sugar beets.

8.  Defendant's branding of Natural Jif® as "Natural" is therefore deceptive, misleading, and false because the sugar is derived from a genetically modified crop, and therefore, the Products cannot be considered "Natural."

9.  To label Natural Jif® as "Natural" creates consumer deception and confusion. A reasonable consumer purchases Natural Jif® believing it is "Natural," based on the Products' labeling. However, a reasonable consumer would not deem the Products to be "Natural" if he/she knew the sugar contained in the Products is derived from genetically modified sugar beets, and, therefore, not "Natural."

10. Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff and the class members, as defined below, at every point of purchase and consumption throughout the Class Period.[2]

## PARTIES

11. Plaintiff Graham Forsher is a citizen of California, residing in Sonoma County, California. Within the past two years, Plaintiff Forsher purchased the Product from a retail

---

[2] The Class Period shall encompass all sales from December 16, 2011 through November 9, 2015 (the "Class Period").

location in Marin County, California. Plaintiff Forsher made the purchase in reliance on the representation on the Product's packaging that the Product is "Natural." Plaintiff Forsher does not consider a product containing genetically modified ingredients to be Natural. Plaintiff Forsher would not have purchased the Product if he had known the Products is not, in fact, Natural.

12.    Defendant The J.M Smucker Co. is a corporation organized under the laws of the State of Ohio, with its principal place of business at 1 Strawberry Lane, Orrville, Ohio 44667. In 201, Smucker had net sales of $5,692,700,000.[3]

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is citizen of the States of California and Defendant is a citizen of the State of Ohio; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

14.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) as Defendants sells the Products within this District.

---

[3]    The J.M. Smucker Co., *2015 Annual Report*, at 25 *available at* http://www.jmsmucker.com/investor-relations/smuckers-annual-report (last visited Dec. 11, 2015).

## SUBSTANTIVE ALLEGATIONS

**A.      Defendant deliberately labeled Natural Jif® to create consumer belief that the Products are "Natural."**

15.     Smucker is an international producer and marketer of peanut butter, including Smucker's®, Laura Schudder's®, and Jif®.

16.     Each year consumers purchase billions of dollars' worth of natural products. In 2010, U.S. consumers purchased $39 billion worth of natural/organic foods; up from $33.7 billion in 2009.[4] In order to capture a share of the growing Natural market, Defendant developed an extensive line of Natural products, included Natural Jif®.

17.     To capitalize on this rising demand, Defendant labels and markets Natural Jif® as a "Natural" peanut butter, thereby distinguishing it from other competing peanut butters. Indeed, since the inception of the Products, Defendant's marketing strategy has been to appeal to consumers looking for "good for you" products.[5]

18.     Natural Jif® is typically packaged and sold in 16 ounce, 28 ounce, or 40 ounce jars.

19.     The Natural Jif® packaging includes green and brown colors that can be characterized as earth tones. (Exs. A-C.)

20.     The front labels for Natural Jif® prominently state they are "Natural." (Exs. A-C.)

21.     The ingredient labels for Natural Jif® Creamy and Natural Jif® Crunchy lists Peanuts, Sugar, Palm Oil, Salt, and Molasses. (Exs. A, B.) The ingredient label for Natural Jif®

---

[4] Natural Products Association, http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociatio n.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8 (last visited December 11, 2015).
[5]     The J.M. Smucker Co., *2009 Annual Report*, at 6, *available at* http://www.jmsmucker.com/investor-relations/smuckers-annual-report (last visited Dec. 11, 2015).

Honey lists Peanuts, Sugar, Palm Oil, Salt, Molasses, and Honey. (Ex. C.)

22.     Thus, the labeling of Natural Jif® was designed to create consumer belief that the Products are "Natural."

> **B.     A reasonable consumer would not deem Natural Jif® to be "Natural."**

23.     One of the primary ingredients in Natural Jif® is sugar.

24.     On information and belief, the sugar in Natural Jif® is derived from sugar beets. Since the mid-1990s, sugar beets have accounted for over half of the sugar production in the United States.[6] As of the 2009/10 crop year, 95% of the sugar beets grown in the United States were from genetically modified seed varieties.[7] Due to this fact, sugar has been listed as an invisible genetically modified ingredient.[8] Therefore, on information and belief, Natural Jif® is made with GMOs.

25.     According to many sources, including industry, government, and health organizations, GMOs are not "Natural." GMOs are "created" artificially in a laboratory through genetic engineering. For example:

> a.     Monsanto, the largest producer of GMOs, defined them as "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are ***not naturally theirs***."[9]
>
> b.     The World Health Organization defines GMO as ". . . organisms (i.e. plants, animals, or microorganisms) in which the genetic material (DNA) has been altered in a way that ***does not occur naturally*** . . . ."[10]

---

[6] USDA, http://www.ers.usda.gov/topics/crops/sugar-sweeteners/background.aspx#.Uo0jzpIjJPo\ (last visited Nov 20, 2015).

[7] *Id.*

[8] *Institute for Responsible Technology: Non-GMO Shopping Guide*, http://web.archive.org/web/20130710231532/http://www.nongmoshoppingguide.com/brands/invisible-gm-ingredients.html (last visited Dec. 11, 2015).

[9] Monsanto, https://web.archive.org/web/20141003100129/http://www.monsanto.com/newsviews/Pages/glossary.aspx (emphasis added) (last visited Sept. 9, 2015).

     c.     The Environmental Protection Agency (EPA) has defined "the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding": "**Conventional breeding** is a method in which genes for pesticidal traits are introduced into a plant through *natural methods*, such as cross-pollination . . . . [In contrast,] **[g]enetically engineered** plant-incorporated protectants are created through a *process that utilizes several different modern scientific techniques* to introduce a specific pesticide-producing gene into a plant's DNA genetic material."[11]

     d.     A 2014 consumer survey confirmed that a majority (64%) of consumers think that the "natural" label on packaged and proceeds food products currently means no GMOs.[12]

26.     A reasonable consumer would not believe a food containing sugar derived from genetically modified sugar beets is "Natural."

**C.     Reasonable consumers purchase Natural Jif® because they have been deceived to believe it is "Natural."**

27.     By claiming Natural Jif® is "Natural," Defendant deceives and misleads reasonable consumers.

28.     Defendant's packaging of Natural Jif® unequivocally demonstrates its intent to persuade the consumer that Natural Jif® is a "Natural" peanut butter.

29.     As described in the preceding paragraphs, everything about the labeling of Natural Jif® is calculated to create consumer belief that this is a "Natural" product.

30.     In fact, reasonable consumers, including Plaintiff, purchased Natural Jif® based upon their belief that it is a "Natural" peanut butter. However, a reasonable consumer would not

---

[10] World Health Organization, http://www.who.int/foodsafety/publications/biotech/20questions/en/ (emphasis added) (last visited Sept. 28, 2015).
11 Environmental Protection Agency, Questions & Answers: Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules (July 19, 2001), at 3, available at http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (emphasis added).
[12] Consumer Reports National Research Center, Food Labels Survey: 2014 Nationally-Represented Phone Survey (2014) 9, *available at* http://www.greenerchoices.org/pdf/ConsumerReportsFoodLabelingSurveyJune2014.pdf.

deem Natural Jif® "Natural" if he/she knew that Natural Jif® contained non-natural ingredients, like GMOs.

31.  As discussed above, Natural Jif® is not "Natural". Hence, Defendant's claims to the contrary are false and misleading.

**D.  Defendant's False Representations Have Injured Plaintiff and Consumers.**

32.  Defendant's false representations about the Products are material in that they induced Plaintiff and the class members to purchase the Products at all or instead of lower-priced peanut butter. For example, Defendant currently sells a 16 ounce jar of Jif® Natural Crunchy Peanut Butter for $2.79.[13] Consumers can purchase a 16 ounce jar of Market Pantry Natural Crunchy Peanut Butter, which does not contain sugar, for $2.29.[14] Plaintiff and the class members would not have purchased the Products at the price offered had they known the true facts about the Products.

**E.  Rule 9(b) Allegations**

33.  Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As detailed in the paragraphs above, Plaintiff satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

34.  WHO: Defendant The J.M. Smucker Co. made material misrepresentations and failed to disclose, or adequately disclose, material facts as detailed herein. Except as identified herein, Plaintiff is unaware, and therefore unable to identify, the true names and identities of

---

[13]      Target,                http://www.target.com/p/jif-natural-crunchy-peanut-butter-16-oz/-/A-14256076#prodSlot=medium_1_15&term=natural+peanut+butter (last visited Dec. 4, 2015).

[14]      Target,     http://www.target.com/p/market-pantry-natural-crunchy-peanut-butter-16-oz/-/A-14711136#prodSlot=medium_1_14&term=natural+peanut+butter(last visited Dec. 4, 2015).

those individuals at The J.M. Smucker Co. who are responsible for such material misrepresentations and/or omissions.

35. WHAT: Defendant made material misrepresentations regarding the "Natural" quality of the Products. Specifically, Defendant misrepresented that: (1) the Products are a "Natural." This representation is false and misleading because the Products are not "Natural" as they contain genetically modified organisms.

36. WHEN: Defendant made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase and consumption throughout the Class Period.

37. WHERE: Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, inter alia, on the packaging of the Products.

38. HOW: Defendant made written material misrepresentations on the packaging of the Products that were designed to, and in fact did, mislead Plaintiff and class members into purchasing the Products.

39. WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and pay a price premium for the Products based on the belief that the Products were "Natural." Defendant profited by selling its product to thousands of unsuspecting consumers.

## CLASS ALLEGATIONS

40.　　Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following classes:

> A.　　The "California Class," which consists of: All consumers within the State of California who purchased the Products during the applicable Class Period for their personal use, rather than for resale or distribution. Excluded from the California Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

> B.　　The "Multi-State Class," which consists of: All consumers in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming who purchased the Products during the applicable Class Period for their personal use, rather than for resale or distribution. Excluded from the Multi-State Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

(collectively, the "Classes")

41.　　Plaintiff reserves the right to amend or modify the definitions of the Classes with greater specificity or division into subclasses after they have had an opportunity to conduct

discovery.

42.    The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

A.    <u>Numerosity</u>: The members of each class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that each class numbers in the thousands.

B.    <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions. These include the following:

i.    Whether Defendant materially misrepresented to the class members that Natural Jif® is "Natural";

ii.    Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

iii.    Whether Defendant represents the Products have characteristics, ingredients, uses, benefits, or qualities which they do not in violations of California Civil Code section 1770(a)(5);

iv.    Whether Defendant represents the Products are of a particular standard, quality, or grade when they are not in violations of California Civil Code section 1770(a)(7);

v.    Whether Defendant's labeling, marketing, and sale of the Products constitutes false advertising in violation of California Civil Code section 1770(a)(9);

vi.    Whether Defendant's labeling, marketing, and sale of Natural Jif® constitutes an unfair, unlawful, or fraudulent business practice in violation of California Business and Professions Code section 17200 *et seq.*;

vii.    Whether Defendant's labeling, marketing, and sale of Natural Jif® constitutes false advertising in violation of California Business and

Professions Code section 17500 *et seq*;

viii.     Whether Defendant's conduct described above constitutes a breach of warranty;

ix.     Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

x.     The appropriate remedies for Defendant's conduct.

C.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the class members because Plaintiff suffered the same injury as the class members—*i.e.*, Plaintiff purchased the Products based on Defendant's misleading representations that the Products are "Natural."

D.     <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of each class. Plaintiff does not have any interests that are adverse to those of the class members. Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E.     <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

## FIRST CAUSE OF ACTION

**(Violation of the California Consumers Legal Remedies Act Cal. Civil Code § 1750,** *et seq.* **– By the California Class)**

43.     Plaintiff incorporates by reference the allegations set forth above.

44.     Plaintiff and the California Class members are "consumers" under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1761(d).

45.     The Products are "goods" under California Civil Code section 1761(a).

46.     The purchases by Plaintiff and the California Class members of the Products are "transactions" under California Civil Code section 1761(e).

47.     As alleged above, Defendant has violated California Civil Code sections 1770(a)(5), (a)(7), and (a)(9) by making false representations on the Product packaging and in marketing (as detailed herein) that the Products are "Natural," when in fact they contain genetically modified organisms, which are not natural.

48.     Plaintiff and the California Class members relied on the representations by Defendant. Plaintiff and the California Class members would not have purchased the Products at the price offered if they had known that, contrary to Defendant's representations, the Products are not, in fact, Natural. Plaintiff and the California Class members suffered damages equal to the purchase price of the Products.

49.     Defendant's misrepresentations constitute unfair, deceptive and misleading business practices in violation of Civil Code §1770(a).

50.     CLRA SECTION 1782 NOTICE. On April 13, 2015, a CLRA demand letter was sent to Defendant that provided notice of Defendant's violation of the CLRA and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint would be filed seeking damages in accordance with the CLRA. Defendant has failed to comply with the letter. Accordingly, pursuant to California Civil Code section 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to

Defendant's acts and practices.

51.     Pursuant to California Civil Code sections 1780 and 1782, Plaintiff and the California Class members seek damages in an amount to be proven at trial; and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**(Violation of the California False Advertising Law Cal. Bus. & Prof. Code § 17500, *et seq*. – By the California Class)**

52.     Plaintiff incorporates by reference the allegations set forth above.

53.     The California False Advertising Law ("FAL"), California Business and Professions Code section 17500 *et seq.*, makes it unlawful for a person, firm, corporation, or association to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the Products.

54.     Defendant's labeling and advertisings includes untrue and misleading statements that the Products are "Natural." These representations were likely to deceive a reasonable consumer. If consumers knew the true facts regarding the Products, as detailed in the Substantive Allegations above, they would not have purchased the Products. Defendant knew, or reasonably should have known, that its representations concerning the Products are untrue and misleading, since it knows how the Products and their ingredients are manufactured. Defendant made the representations at issue with the intent to induce Plaintiff and the California Class members to purchase the Products. Plaintiff and the California Class members purchased the Products in reliance on the untrue and misleading representations by Defendant.

55.     THEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
**(Violation of the California Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq*. – By the California Class)**

56.     Plaintiff incorporates by reference the allegations set forth above.

57.     The California Unfair Competition Law, California Business and Professions Code section 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

58.     Defendant's conduct is unlawful because it violates the CLRA, the FAL, as well as California Health & Safety Code section 110660, which states: "Any food is misbranded if its labeling is false or misleading in any particular."

59.     Defendant's conduct is fraudulent because, as alleged in the Substantive Allegations above, Defendant's representations concerning the Products were false and misleading, and Plaintiff and the California Class members relied on those representations in purchasing the Products.

60.     Plaintiff and the California Class members have suffered injury in fact and lost money as a result of Defendant's conduct, since they purchased the Products in reliance on Defendant's misrepresentations and would not have purchased the Products if they had known the true facts about the Products.

61.     THEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### (Violation of the Ohio Deceptive Trade Practices Act R.C. § 4165.01, *et seq.* – By the Multi-State Class)

62.     Plaintiff incorporates by reference the allegations set forth above.

63.     Defendant has made and continue to make deceptive, false and misleading statements concerning the "Natural" qualities of the Products, namely manufacturing, selling, marketing, packaging and advertising the Products to consumers with false and misleading statements concerning their "Natural" qualities, as alleged herein. These unfair and deceptive statements include, but are not limited to, the word "Natural" appearing on the label of each of the Products. In fact, the Products contain ingredients that a reasonable consumer would not consider to be "Natural."

64.     Defendant has unfairly and deceptively represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have.

65.     Further, Defendant has unfairly and deceptively represented that goods or services

are of a particular standard, quality, or grade that they are not.

66.     Defendant's deceptive, false and misleading statements deceived Plaintiff and the Multi-State Class.

67.     Defendant's deception is material as it influenced Plaintiff's purchasing and payment decisions.

68.     Plaintiff and the Multi-State Class have been damaged as a direct and proximate result of Defendant's deception.

69.     Defendant has violated the Ohio Deceptive Trade Practices Act, R.C. §4165.01 *et seq*.

70.     THEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**(Violation of the Ohio Consumer Sales Practices Act R.C. § 1345.01, *et seq.* – By the Multi-State Class)**

71.     Plaintiff incorporates by reference the allegations set forth above.

72.     Prior to the purchases by Plaintiff and the Multi-State Class, under Ohio Admin. Code 109:4-3-03(B)(1), the Ohio Attorney general declared it to

> . . . be a deceptive and unfair act or practice for a supplier to make an offer of sale of any goods or services when . . . [a] supplier uses a statement or illustration or makes a representation in any advertisement which would create in the mind of a reasonable consumer, a false impression as to the grade, quality . . . or any other material aspect of the offered goods or services in such a manner that upon subsequent disclosure or discovery of the facts, the consumer may be induced to purchase goods or services other than those offered[.]

73.     Defendant has committed and continues to commit unfair and deceptive acts or practices in connection with a consumer transaction, namely manufacturing, selling, marketing, packaging and advertising the Products to consumers with false and misleading statements concerning their "Natural" qualities, as alleged herein. These unfair and deceptive statements include, but are not limited to, the word "Natural" appearing on the label of each of the Products.

74.     Defendant has unfairly and deceptively misrepresented that the Products have sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do

not have.

75.     Further, Defendant has unfairly and deceptively misrepresented that the Products are of a particular standard, quality, grade, style, prescription, or model that it is not.

76.     Defendant's unfair and deceptive practices deceived Plaintiff and the Multi-State Class.

77.     Defendant's unfair and deceptive practices were material as they influenced Plaintiff's purchasing and payment decisions.

78.     Had Plaintiff and the Multi-State Class been aware of Defendant's deceptive and unfair represents they would have purchased an alternative peanut butter.

79.     Plaintiff and the Multi-State Class have been damaged as a direct and proximate result of Defendant's deceptive and unfair practices.

80.     Defendant has violated the Ohio Consumer Sales Practices Act, R.C. §1345.01 *et seq*, as well as Ohio Admin. Code 109:4-3-01 *et seq*.

81.     THEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
### (Breach of Express Warranty – By the Multi-State Class)

82.     Plaintiff incorporates by reference the allegations set forth above.

83.     Plaintiff and the Multi-State Class members formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant represented that the Products were "Natural," as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Multi-State Class members, on the one hand, and Defendant, on the other.

84.     Defendant made the above-described representations to induce Plaintiff and the Multi-State Class members to purchase the Products, and Plaintiff and the Multi-State Class members relied on the representations in purchasing the Products.

85.     All conditions precedent to Defendant's liability under the above-referenced contract has been performed by Plaintiff and the other Multi-State Class members.

86.     Defendant breached their express warranties about the Products because, as alleged above, the Products are not "Natural." Defendant breached the following state warranty laws:

A.      Alaska Stat. section 45.02.313;

B.      A.R.S. section 47-2313;

C.      A.C.A. section 4-2-313;

D.      Cal. Comm. Code section 2313;

E.      Colo. Rev. Stat. section 4-2-313;

F.      Conn. Gen. Stat. section 42a-2-313;

G.      6 Del. C. section 2-313;

H.      D.C. Code section 28:2-313;

I.      O.C.G.A. section 11-2-313;

J.      HRS section 490:2-313;

K.      Idaho Code section 28-2-313;

L.      810 ILCS 5/2-313;

M.      Ind. Code section 26-1-2-313;

N.      K.S.A. section 84-2-313;

O.      KRS section 355.2-313;

P.      11 M.R.S. section 2-313;

Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.      Minn. Stat. section 336.2-313;

S.      Miss. Code Ann. section 75-2-313;

T.      R.S. Mo. Section 400.2-313;

U.      Mont. Code Anno. Section 30-2-313;

V.      Neb. Rev. Stat. section 2-313;

W.      Nev. Rev. Stat. Ann. section 104.2313;

X.      RSA 382-A:2-313;

Y.      N.J. Stat. Ann. section 12A:2-313;

Z.      N.M. Stat. Ann. section 55-2-313;

AA.     N.Y. U.C.C. Law section 2-313;

AB.     N.C. Gen. Stat. section 25-2-313;

AC.     N.D. Cent. Code section 41-02-30;

AD.     ORC Ann. section 1302.26;

AE.     12A Okl. St. section 2-313;

AF.     Or. Rev. Stat. section 72-3130;

AG.     13 Pa.C.S. section 2313;

AH.     R.I. Gen. Laws section 6A-2-313;

AI.     S.C. Code Ann. section 36-2-313;

AJ.     S.D. Codified Laws, section 57A-2-313;

AK.     Tenn. Code Ann. section 47-2-313;

AL.     Tex. Bus. & Com. Code section 2.313;

AM.     Utah Code Ann. section 70A-2-313;

AN.     9A V.S.A. section 2-313;

AO.     Va. Code Ann. section 59.1-504.2;

AP.     Wash. Rev. Code Ann. section 62A.2-313;

AQ.     W. Va. Code section 46-2-313;

AR.     Wyo. Stat. section 34.1-2-313.

87.     As a result of Defendant's breaches of express warranty, Plaintiff and the other members of the Multi-State Class were damaged in the amount of the purchase price they paid for the Products, in amounts to be proven at trial.

88.     Within a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of themselves and the other members of the Multi-State Class, placed Defendant on notice thereof.

89.     THEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.      For an order requiring Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

B.      For compensatory damages according to proof;

C.      For punitive damages according to proof;

D.      For reasonable attorneys' fees and costs of suit;

E.      For pre-judgment interest; and

F.      For such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims so triable.

Date: December 16, 2015                    Respectfully submitted,

**REESE LLP**
*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93 Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**HALUNEN LAW**
Melissa Wolchansky (to be admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
Charles D. Moore (to be admitted *pro hac vice*)
*Moore@halunenlaw.com*
1650 IDS Center
80 S 8th Street
Minneapolis, Minneapolis 55402
Telephone: 612-605-4098
Facsimile: 612-605-4099

*Counsel for Plaintiff*

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

